UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAURA A.CYR ,                          )   Case No. CV 06-01585 DDP (RCx)
                                       )
                Plaintiff,             )   **ORDER RE MOTION FOR ATTORNEYS'**
                                       )   **FEES AND PREJUDGMENT INTEREST**
        v.                             )
                                       )   [Motion filed on December 3,
RELIANCE STANDARD LIFE                 )   2007]
INSURANCE CO., et al.,                 )
                                       )
                Defendants.            )
_____        )

     This matter comes before the Court on Plaintiff's motion for
Attorney's Fees and Prejudgment Interest.  After reviewing the
materials submitted by the parties and considering the arguments
therein, the Court grants the motion in part and denies the motion
in part.


**I.    BACKGROUND**

     This Employee Retirement Income Security Act ("ERISA")  case
arose out of Plaintiff Laura Cyr's claim against Defendant Reliance
Standard Life Insurance Company ("RSL") for additional long term
disability ("LTD") benefits based on an adjusted salary and
declaratory relief clarifying her rights to future benefits against

her former employer Channel Technologies, Inc. ("CTI") and CTI's insurer, RSL.  Plaintiff also alleged equitable estoppel against RSL and CTI and breach of fiduciary duty against RSL.

In her complaint, Plaintiff Cyr asserted that she worked for CTI from February 1988 to October 2000.  In 2001, Cyr filed a civil suit against her employer alleging gender discrimination for unequal pay.  She argued that during the period from September 1998 through October 2000 her salary as vice president of administration was approximately $70,000 less (she was paid $85,000 when she should have been paid at least $155,000) than the annual salary of CTI's male employees performing work of equal skill, effort, and responsibility.

According to Cyr, in 2004 she and CTI entered into a wage agreement settling her lawsuit in reliance upon RSL's assurance that it would pay LTD benefits based on the increased salary Cyr should have been receiving at the time of her disability.  Cyr further contended that RSL assured her that its determination to adjust her LTD benefits both retroactively and prospectively was not dependent on whether its reinsurer contributed to the increased LTD payments.  In January 2005, RSL indicated that it would not adjust Cyr's benefits because its reinsurer had refused to accept the terms of the wage agreement.  After exhausting her administrative remedies, Cyr then brought this action, seeking the difference between the LTD benefits received and the increased LTD benefits that should have been paid based on a higher salary, a clarification of her future rights, and attorneys' fees.

On November 19, 2007, the Court granted summary judgment in favor of Plaintiff Cyr ("the Order").  The Court found that,

1  pursuant to 29 U.S.C. § 1132(a)(1)(b), Cyr is entitled to the

2  increased retroactive and future benefits to be calculated based

3  upon a salary of $155,000.00, in accordance with the wage

4  adjustment agreement.  Plaintiff now moves this Court to award

5  attorneys' fees and prejudgment interest.

6

7  **II.  DISCUSSION**

8      A.   Attorneys' Fees

9          1.   Award

10     ERISA permits the Court, "in its discretion," to "allow a

11 reasonable attorney's fee and costs of action to either party."  28

12 U.S.C. § 1132(g).  The Ninth Circuit has held that "this section

13 should be read broadly to mean that a plan participant or

14 beneficiary, if he prevails in his suit under § 1132 to enforce his

15 rights under his plan, should ordinarily recover an attorney's fee

16 unless special circumstances would render such an award unjust."

17 Carpenters Health and Welfare Trust for S. Cal. v. Vonderharr, 384

18 F.3d 667, 674 (9th Cir. 2004) (internal quotation marks and

19 alterations omitted).

20     Under Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th

21 Cir. 1980), district courts should consider the following

22 nonexclusive factors in determining whether to award attorneys'

23 fees:

24          (1) the degree of the opposing parties' culpability or bad
           faith; (2) the ability of the opposing parties to satisfy an
25          award of fees; (3) whether an award of fees against the
           opposing parties would deter others from acting under similar
26          circumstances; (4) whether the parties requesting fees sought
           to benefit all participants and beneficiaries of an ERISA plan
27          or to resolve a significant legal question regarding ERISA;
           and (5) the relative merits of the parties' positions.

28

3

In this case, all five factors support an award of fees.

First, RSL shoulders significant culpability with respect to its behavior in this case; the Order, indeed, noted that RSL's behavior "reeks of bad faith." (Order at 21.) To name just a few examples of this culpability, which are described at length in the Order, RSL never officially denied Cyr's claim; it just stopped responding to her inquiries. It then tried to claim that Cyr could not appeal because there had been no adverse decision. When Cyr persisted anyway, RSL took the position in this litigation that 1) it had "lost" her entire administrative record; 2) its denial had been clear and the reasons straightforward; and 3) <u>Cyr's</u> bad faith had in fact caused the conflict. To put it mildly, the Court has not been impressed by RSL's behavior.

Second, there is no dispute that RSL, as a large insurance company, will be able to satisfy an award. Third, the Court finds that a substantial award will help deter similar conduct. The Court further finds that such deterrence is important, given that there is evidence RSL has treated other ERISA claimants in a similarly disrespectful manner. (<u>See</u> Order at 21 n.10.) Fourth, Plaintiff's attorneys successfully sought the resolution of several important legal questions regarding ERISA, including whether a de facto plan administrator that also happens to be a third party insurer is a proper defendant under 29 U.S.C. § 1132(a)(1)(b). Fifth, and finally, the Court found Plaintiff's position to be entirely meritorious, insofar as it granted summary judgment in favor of Cyr and awarded her all of the relief that she sought.

The Court finds that the <u>Hummell</u> factors all favor an award of fees, and RSL has not suggested any "special circumstance" that

1  would remove this case from the realm of the ordinary.

2  Accordingly, the Court will award fees in this case.

3          2.   <u>Reasonableness</u>

4      The primary dispute over this motion is whether the amount

5  requested by Plaintiff's attorneys is reasonable.  With some

6  adjustments, the Court finds that Plaintiff's request is

7  reasonable.

8          a.   <u>Hourly Rate</u>

9      Plaintiff has a contingency fee arrangement with her

10  attorneys.  In such ERISA cases, attorneys' fees are calculated

11  using the "lodestar" method, by which courts "multiply the number

12  of hours reasonably expended by the attorney(s) on the litigation

13  by a reasonable hourly rate."  <u>McElwaine v. US West, Inc.</u>, 176 F.3d

14  1167, 1173 (9th Cir. 1999).  "[T]he determination of a reasonable

15  hourly rate is not made by reference to the rates actually charged

16  the prevailing party."  <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d

17  942, 946 (9th Cir. 2007) (internal quotation marks omitted).

18  Instead, "billing rates should be established by reference to the

19  fees that private attorneys of an ability and reputation comparable

20  to that of prevailing counsel charge their paying clients for legal

21  work of similar complexity."  <u>Id.</u> (internal quotation marks

22  omitted).  "When a party seeks an award of attorneys' fees, that

23  party bears the burden of submitting evidence of the hours worked

24  and the rate paid."  <u>Carson v. Billings Police Dep't</u>, 470 F.3d 889,

25  891 (9th Cir. 2006).

26      Plaintiff's attorneys claim an hourly rate of $475 for Joseph

27  Creitz, $425 for Joseph Garofolo, and $75 for their paralegals.

28  The Court finds that Mr. Creitz's and the paralegals' rates are

1  reasonable, but reduces Mr. Garofolo's rate by $25 to $400/hour.

2      At the outset, the Court emphasizes that both attorneys did an

3  impressive job litigating this extremely complicated case, the

4  likes of which the Court has not seen in ten years.  Both Mr.

5  Creitz and Mr. Garofolo ought to be fairly compensated for their

6  excellent work.

7      Defendant claims that the prevailing market rate for ERISA

8  cases is $350-400 for a senior partner and $200-250 for  mid-level

9  associate.  (Opp'n 6.)  It then suggests a reduction in the

10  proposed fee to $375 for Mr. Creitz and $350 for Mr. Garofolo,

11  indicating that it considers Creitz at the level of a senior

12  partner and Garofolo a junior partner.  The Court is not convinced

13  that these rates are current because the cited cases are from

14  several years ago.  (See id. (citing Gunn v. Reliance Standard Life

15  Ins., 407 F. Supp. 2d 1162, 1165 (C.D. Cal. 2006); May v. Metro.

16  Life Ins. Co., 2005 WL 839291 (N.D. Cal. 2005); Cortes v. Metro.

17  Life Ins. Co., 380 F. Supp. 2d 1125, 1130-31 (C.D. Cal. 2005).)

18  Yet, "[d]istrict courts have the discretion to compensate

19  plaintiff's attorneys for a delay in payment by . . . applying the

20  attorneys' current rates to all hours billed during the course of

21  the litigation."  Welch v. Metro. Life Ins. Co., 480 F.3d 942, 947

22  (9th Cir. 2007).  In this case, to compensate for the delay in

23  payment the Court finds it appropriate to apply the 2008 rate to

24  all attorneys fees.

25      The Court finds that the 2008 prevailing market rate for

26  plaintiff-side partner-level ERISA attorneys is $400-575/hour.[1]

27  _____

28      [1] The Court agrees with Judge Collins that the fact "[t]hat
                     (continued...)

1    See Hawkins-Dean v. Metro. Life Ins. Co., 2007 WL 2735684, at *1

2    (C.D. Cal. Sept. 18, 2007) (awarding senior partner $575/hour,

3    associate $350/hour, and law clerks $200/hour); Rorabaugh v.

4    Continental Cas. Co., 2007 WL 867301 (C.D. Cal. March 16, 2007)

5    (awarding $450/hour).  Further, Plaintiff's counsel have submitted

6    two declarations from two senior ERISA lawyers confirming these

7    rates.  (Creitz Decl. Ex. A; Garofolo Decl. Ex. A.)

8         The Court further finds that Mr. Creitz has carried his burden

9    of showing his fee is $475, but reduces Mr. Garofolo's fee to $400.

10   Mr. Creitz graduated from the University of California, Hastings

11   College of the Law, in 1992.  (Creitz Decl. ¶ 2.)  He has been

12   litigating ERISA cases since 1995, at a leading labor law firm, as

13   a trial attorney for the United State Department of Labor, and,

14   since 2005, as a solo practitioner.  (Id. ¶¶ 2-3.)  Since 1997 he

15   has been an Adjunct Professor at Hastings and in 2003 he also

16   completed an L.L.M. in ERISA-focused Taxation *cum laude* from Golden

17   Gate University.  (Id. ¶ 3.)

18        Defendant points out that Creitz has only litigated eight

19   cases in California's district courts, as opposed to the 30-40

20   litigated by several comparable attorneys.  (Opp'n 8.)  However,

21   given the superb quality of work in this case, the Court is

22   persuaded that quality, not quantity, is of paramount importance.

23   Daniel Feinberg, who has litigated pivotal ERISA cases in the Ninth

24   Circuit and has been practicing since 1988, charges $575/hour.

25   _____

26        [1](...continued)
     Defendants' attorneys charge a lower rate does not dissuade the
27   Court from its finding that the rate of [$400-575] is reasonable."
     Rorabaugh v. Continental Cas. Co., 2007 WL 867301, at *3 (C.D. Cal.
28   March 16, 2007).

1  (Feinberg Decl. ¶ 8.)    See United Steelworkers of Am. v. Phelps

2  Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the

3  plaintiffs' attorney and other attorneys regarding prevailing fees

4  in the community, and rate determinations in other cases,

5  particularly those setting a rate for the plaintiffs' attorney, are

6  satisfactory evidence of the prevailing market rate."). Creitz has

7  testified that he charges $475 for "ERISA consulting and

8  litigation."[2]  (Creitz Decl. ¶ 4.)  As an attorney with thirteen

9  years of experience in ERISA litigation, on top of his expertise in

10  taxation and as a professor, the Court believes that $475/hour,

11  $100 less than that charged by Mr. Feinberg, is appropriate.

12      Mr. Garofolo was involved with ERISA even before graduating

13  from law school, working for the United States Department of Labor,

14  Pension, and Welfare Benefits Administration, the agency then

15  responsible for enforcing ERISA.  He then spent three years

16  litigating ERISA cases at two law firms, before opening his own

17  practice in 2003.  He has successfully litigated multiple cases,

18  according to his declaration.  The Court was impressed with his

19  legal skills, and other federal courts have agreed.  One recent

20  court characterized the legal representation in a case Garofolo

21  worked on as "extraordinary."  Eslava v. Gulf Telephone Co., Inc.,

22  2007 WL 4105977, at *1 (S.D. Ala. Nov. 16, 2007.)

23

24

25      [2] Defendant mischaracterizes Creitz's hourly fee as for
    "consulting" only in order to argue that the fee may be justified
26  for specialized tax matters, but not for standard benefits
    litigation.  (Opp'n 7.)  Mr. Creitz did not state that his $475 fee
27  was limited to complex matters.  Even if he had, however, the Court
    notes that this case was as complicated an ERISA matter it has seen
28  in years.

1  Nevertheless, Garofolo has only been practicing for six-and-a-
2  half years.  Although a former colleague and experienced ERISA
3  lawyer has stated in a declaration that $425 is within the market
4  rate for attorneys with Garofolo's résumé, the Court is hesitant to
5  award him a rate so close to that awarded attorneys who have been
6  practicing for many more years.  (<u>See</u> Def's. Ex. 2, Attorney's Fees
7  Motion successfully seeking $450/hour for attorneys with 15-20
8  years of ERISA litigation experience.)  Indeed, Garofolo's actual
9  rate is not the $425 charged in this case, but in fact, as of May
10  2007, is $375/hour.  (<u>See</u> Def's. Ex. 7, Garofolo Attorney's Fees
11  Motion.)  Of course, it is the market rate, not Garofolo's personal
12  rate, that is at issue, and Garofolo urges that the $375 is for
13  markets outside of expensive areas like Los Angeles, San Francisco,
14  and New York."  (Reply 11.)  To account for that cost of living
15  difference, the Court agrees that some increase from $375 is
16  appropriate.  Accordingly, the Court will award fees to Mr.
17  Garofolo at a rate of $400/hour.

18  Defendant has not challenged the paralegals' rate of $75/hour,
19  and the Court finds that reasonable as well.

20                    b.   <u>Specific Charges</u>

21  The Court agrees with Defendant that the charges incurred by
22  Plaintiff's attorneys are high - almost 600 hours for Mr. Garofolo,
23  500 for Mr. Creitz, and 45 for the paralegals.  After carefully
24  reviewing the itemized time sheets (which the Court notes are
25  carefully and precisely done), the Court has reduced some of the
26  hours claimed.  However, for the most part the Court found the time
27  spent reasonable.

28

At the outset, the Court emphasizes that, contrary to Defendant's contention, this was not a straightforward case. Although it involved issues that in a different case might be straightforward, such as a benefits claim, and contract and estoppel issues, anything that could have been unusual about this case was.  Just to identify a few of the twists and turns: Plaintiff forwarded novel legal theories about whether RSL was a proper party, and ultimately succeeded.  Because Defendant lost the entire administrative record, it was far from clear how to review the administrative record, and whether and how to consider extrinsic evidence.  Because Defendant took a number of different positions with respect to Cyr's claim (that it would accept it, that it would not respond at all, that she could not appeal, that it had denied the claim all along, that Cyr had acted in bad faith), combing through the thousands of pages of documents was an arduous task indeed.  In fact, the Court suspects that the time sheets for its staff, were they relevant here, would be quite hefty themselves.

The Court will now address Defendant's specific objections in turn:

**PRE-LITIGATION COMMUNICATIONS WITH BRAD GINDER:**

Plaintiff has billed 12.7 hours for Mr. Garofolo's pre-litigation correspondence with Ginder, the attorney in her wage discrimination case.  Defendant contends that no fees should be awarded because the work was done in connection with the underlying settlement, not the ERISA litigation.

However, the Ninth Circuit has noted that "conferences with clients, drafting the complaint and other reasonable efforts

10

directed toward the filing of the litigation" are "sanctioned" expenses.  <u>Dishman v. Unum Life Ins. Co. of Am.</u>, 269 F.3d 974, 987-88 (9th Cir. 2001) (internal quotations omitted).  The Court has carefully reviewed Mr. Garofolo's time entries and has found nothing to indicate that work was done on Cyr's settlement.  Instead, he appears to have been discussing with Ginder the effect of her state law claims on the impending ERISA action.  This was necessary work.  Further, it was not, as Defendant suggests, duplicative because Ginder's time is not being billed.  However, the Court agrees that 12.7 hours billed in communications is slightly excessive, especially given this does not include research or writing time.  Accordingly, the Court reduces Garofolo's hours by 4.7.

**REVIEW OF DOCUMENTS AND SETTLEMENT MATERIALS:**

Plaintiff seeks compensation for 16.3 hours billed by Mr. Garofolo for reviewing the litigation and settlement materials from Cyr's wage discrimination lawsuit.  The Court agrees that this review was an important prelitigation step, both because it was necessary to familiarize himself with her wage lawsuit in order to understand the factual basis of her ERISA claim, and because RSL directly used the settlement materials in an attempt to show that Cyr's ERISA claim was brought in bad faith.  Although the amount of time spent reviewing – which does not include research, communications, or writing – seems high, Garofolo has clearly documented his time.  There were multiple revisions to the settlement, and most of the increments of time were fairly small (half hour or less).  Thus, the Court will award the 16.3 hours requested.

**CASE ANALYSIS AND DRAFTING COMPLAINT:**

Plaintiff seeks 64.2 hours for these tasks.  Defendant argues for a reduction to 30 because 1) the time was duplicative and excessive; and 2) time was spent considering impermissible state law claims.

The Court does not agree that the time billed was duplicative.  In fact, Mr. Garofolo has charged 58 hours and Mr. Creitz 6.2.  (See Pl's. Itemized Reply 6.)  Thus, Mr. Garofolo obviously undertook the brunt of the work on the complaint.  Mr. Creitz's charges of 2 hours for document review, 2.6 hours for drafting and revising the complaint, .4 for communications with Mr. Garofolo, and 1.2 for review of Answers, is not excessive. Further, the Court does not agree that Plaintiff has charged for drafting impermissible state law claims.  Instead, Mr. Garofolo was reviewing Mr. Ginder's work on Cyr's wage discrimination claim for its effect on her ERISA suit.  (See Garofolo Timesheet 6/6/05, 6/7/05.)

In general, the Court finds Mr. Garofolo's time on this issue reasonable.  He spent at least 9.8 hours doing research, but this was split up among five different issues.  Spending 2.4 hours on benefit claim research (9/14/05) and 1 hour on ambiguous plan provisions (6/2/05) is not excessive.  Even 4.2 hours on estoppel (6/2/05) is not excessive, given that estoppel claims are highly fact specific inquiries, so the case law must be examined in greater depth.

With Garofolo's charges for spending 25.7 hours drafting the complaint, however, The Court takes some issue.  While complaints are of course essential litigation documents, they do not involve

1  the high level legal analysis required to draft a sophisticated

2  summary judgment motion (which these attorneys did, several times).

3  This case did not become complicated by virtue of its initial legal

4  theories of recovery; it became complicated based on the legal

5  issues that arose once RSL responded.  It should not take an

6  experienced attorney, having already done the research, 16.6 hours

7  to draft the sections on RSL's alleged breaches (6/2/05, 6/3/05).

8  Nor should it take 4.6 hours to draft the factual allegations

9  (5/31/05, 8/7/05).  A reasonable amount of time to draft a

10 complaint of this nature is approximately 10 hours.  Accordingly,

11 the Court reduces Mr. Garofolo's hours by 16.

12 **RULE 26 CONFERENCE AND REPORT:**

13      Cyr seeks 10 hours for Creitz and 9 for Garofolo for work done

14 on the Rule 26 conference and report.  Defendant seeks to reduce

15 this amount on the basis that it was not necessary for both parties

16 to attend the scheduling conference.  The Court agrees that a

17 scheduling conference can easily be handled by one experienced

18 attorney and therefore reduces the hours by 4 for each attorney,

19 and a total of 8 (the equivalent of one attorney's travel time).

20 **INITIAL DISCLOSURES AND PROTECTIVE ORDER:**

21      Defendant makes generalized objections to the 15.9 hours

22 claimed for this work, arguing that the number of hours is "in many

23 ways" duplicative and excessive.  (Def's. Itemized Objections at

24 10-11.)

25          [A] party should raise objections with specificity, pointing
           out particular items, rather than making generalized
26         objections to the reasonableness of the bill as a whole.  The
           defendants' failure to raise more than a generalized objection
27         to the fees in this case . . . ordinarily require[s a] . . .
           review [of] only those items which should have been eliminated
28         through a cursory examination of the bill.

1  <u>Wooldridge v. Marlene Industries Corp.</u>,898 F.2d 1169, 1176 (6th

2  Cir. 1990).  The Court finds the hours spent on the initial

3  disclosures, which are documented by short increments of time over

4  a period of two months, are all reasonable.

5  **MEDIATION:**

6     Cyr's attorneys seek 46.3 hours for their time preparing for

7  and attending a mediation.  Defendant objects, arguing that two

8  attorneys at the mediation were not necessary.  Plaintiff provides

9  a compelling justification for bringing both attorneys: "Tasks were

10 divided with Mr. Garofolo preparing for discussion regarding the

11 facts of the case and the strength of Plaintiff's claims and Mr.

12 Creitz preparing specific liability calculations and settlement

13 proposals." (Pl's. Response to Itemized Objections 11.)

14 Nevertheless, given the skill and experience of these two

15 attorneys, the Court finds that the presence of one attorney would

16 have been more than sufficient.  Accordingly, the Court reduces

17 each attorney's fees by 8 hours to compensate.

18 **GENERAL RESEARCH IN 2006:**

19    Defendant complains that the 2.1 hours spent reviewing recent

20 relevant Ninth Circuit decisions should be reduced to 1 hour

21 because de novo review applied so there was no need to research the

22 standard of review in cases involving discretionary authority.  The

23 Court rejects this contention because Defendant had not yet

24 conceded de novo review.  Indeed, absent this concession

25 significant briefing might have been required on this issue, given

26 that RSL did in fact claim that it had the discretion to interpret

27 the plan terms as it saw fit.  Defendant further challenges the .8

28 hours spent researching penalties for failure to provide plan

documents on the basis of the fact that these penalties are
assessed against the Plan Administrator (Def's. Itemized 14.)   The
Court finds persuasive Mr. Garofolo's explanation that it was
necessary to research whether a de facto Plan Administrator could
be held liable for failure to provide plan documents.   Given that a
fundamental issue in this case was the extent of RSL's
responsibility for Cyr's benefits as a de facto Plan Administrator,
the Court finds .8 hours of research entirely reasonable.

**DRAFTING AND RESPONDING TO DISCOVERY:**

Plaintiff seeks 38.5 hours for discovery-related tasks.
Defendant seeks to reduce this to 25 hours on the grounds that 1)
the hours are excessive, 2) more work should have been done by the
paralegals, and 3) hours spent propounding discovery to Cyr's
employer CTI should not be counted.

Defendant does not challenge the work that was performed by
Mr. Garofolo's paralegal.   Plaintiff propounded almost 2,000 pages
of documents in this case.   The Court finds that the requested 15.8
hours is a reasonable amount of time for a paralegal to spend
scanning, Bates stamping, proofing, and assembling 2,000 documents.

As to the remaining 23 hours claimed by the attorneys, the
Court finds this reasonable as well.   Contrary to the Defendant's
contention, this case did not involve standard ERISA discovery
requests.   First, the case involved estoppel and fiduciary breach
as well as benefits claims, requiring Plaintiff to request
admissions and prepare interrogatories accordingly.   In addition,
Defendant made a broad request for all communications relating to
the settlement of Cyr's wage discrimination claim.   This required
Mr. Creitz and Mr. Garofolo to scour through thousands of pages

replete with privileged attorney/client communications that had to be identified and redacted.  Having made such a broad request, Defendant cannot now complain that it took Plaintiff too much time to prepare a response.

Finally, it was reasonable for Plaintiff to spend 2.2 hours propounding discovery on Cyr's former employer.  Plaintiff needed this information to determine whether RSL was a proper party to the benefits claim.  Indeed, this was a major issue at summary judgment, and CTI's benefits plan documents (or lack thereof) were important to the Court's determination that RSL was a proper party.

**DISCOVERY DISPUTE RE RSL's RFP RESONSES:**

Plaintiff seeks 41.3[3] hours for work done on the successful motion to compel and related discovery disputes.  Defendant raises general objections that the amount should be reduced to 30.  The Court disagrees.

As with much of this litigation, it was RSL's behavior that made discovery lengthy and complicated.  As the most egregious example, instead of admitting it had lost Cyr's administrative record, Defendant objected to the discovery request on the grounds that it was "overly broad in scope."  (Reply Garofolo Decl. Ex. 4 at Request No. 2.)  Such behavior resulted in a prolonged meet-and-confer process, and ultimately necessitated a motion to compel.  As Judge Collins put it in a similar case, "[h]aving provoked such a battle, Defendants cannot now complain that Plaintiff engaged

---

[3] The Court agrees with Plaintiff that the entries for 4 hours on 5/8/07 and .5 hours on 4/2/07 were unrelated to the motion to compel or the discovery dispute.  (See Pl's. Itemized 16.)  Mr. Creitz's travel time to LA on May 8 was for the Richard Walsh deposition, not for the motion to compel.

them." <u>Rorabaugh</u>, 2007 WL 867301 at *2.  Furthermore, while in a
different context the Court might be unwilling to award fees for
two attorneys to attend a motion to compel, in this case, given the
importance of the documents that Plaintiff sought, and the
intransigence of RSL, the Court finds it reasonable that Plaintiff
needed the full strength and attention of both her attorneys for
this motion.

**DEPOSITIONS:**

Plaintiff seeks 92 hours for work on the five depositions
taken by both sides.  Defendant's only objection is that the
billing is duplicative because both attorneys prepared for and
traveled to Richard Walsh's deposition and both prepared for Brad
Ginder's deposition.  The Court agrees in part.

Although Richard Walsh's deposition was one of the most
important pieces of evidence in the case, still one experienced
attorney alone can handle a deposition.  Indeed, Mr. Creitz took
primary responsibility for this deposition anyway.  However, the
travel time to Los Angeles did not overlap because Mr. Garofolo was
already in Los Angeles to attend the motion to compel.  (<u>See</u>
Garofolo entry 5/8/07.)  The only other possible overlap was the
2.1 hours both attorneys spent preparing for Mr. Ginder's
deposition, a reasonable amount.  Defendant makes no other specific
objections, and, after reviewing the time sheets, the Court sees
nothing unreasonable about the entries.  Accordingly, the Court
reduces each attorney's time by 2.5 hours (the equivalent of one
attorney's time spent attending the Walsh deposition).

///

///

**Motion in Limine 1:**

Defendant seeks to reduce the time billed on Motion in Limine No. 1 from 47.1 to 15 hours because 1) it was denied, 2) it is excessive, and 3) the work of the attorneys overlapped.

First, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Smith v. CMTA-IAM Pension Trust, 746 F.2d 587, 590-91 (9th Cir. 1984). In this case, the motion in question sought to preclude Defendant from producing evidence in support of affirmative defenses because of its spoliation in losing the administrative record. Given the complication such spoliation has caused in this case, researching and filing such a request was not unreasonable.

However, the Court does find the 47.1 hours expended on this motion excessive and duplicative. Mr. Creitz spent 10.1 hours and Mr. Garofolo 5.3 drafting the initial motion. The Court agrees the motion was important, but notes that it did not present any particularly complicated legal issues. For the same reason, the Court finds excessive and duplicative the 18.2 hours by Mr. Creitz and 13.4 by Mr. Garofolo billed for researching and drafting the reply. It should not have taken over a week of one attorney's full time work for these experienced ERISA litigators to draft a single issue motion and reply. Approximately 15 hours total is a more reasonable amount. Accordingly, the Court reduces Mr. Creitz's time by 18 hours and Mr. Garofolo's time by 13 hours.

**Motion in Limine No. 2 and Proposed No. 3:**

Plaintiff seeks 69.6 hours for this work, which "sought to obtain an adverse inference regarding the lost administrative

record and deleted emails and to preclude Defendant from submitting
evidence to rebut the inference." (Pl's. Itemized 26.)   The Court
agrees that this motion was important and acknowledges that
Defendant's actions (in "losing" the record) caused Mr. Creitz and
Mr. Garofolo significant extra work, but nonetheless finds that 70
hours of work on these two motions is excessive and duplicative.
For example, Mr. Creitz spent at least 22 hours (6 on 6/21, 16 on
7/4), and Mr. Garofolo spent at least 18 (8.3 on 6/27, 10.3 on 6/8)
on what appear to be essentially the same issues (destruction of
evidence, spoliation).   Further, Mr. Creitz billed 9.5 hours for
"making final revisions to MPA opposition documents and MiL #2" on
7/5/07.   Any time in addition to the 22 hours already spent is
probably excessive.   Accordingly, the Court removes 20 hours from
each of the attorneys bills, reducing the total amount by 40 hours.

**Opposition to RSL's MSJ:**

Plaintiff's attorneys have billed 75.5 hours[4] for work on this
opposition, which included a motion to strike and a motion for
sanctions.   The Court finds this amount of time excessive.

The Court agrees with Plaintiff that Defendant's misconduct in
violating a stipulation by moving for summary judgment on all
issues instead of the agreed-upon lone issue of whether RSL was a
proper party, and by making borderline frivolous argument such as
claiming Plaintiff's settlement with CTI waived all her claims
against RSL, significantly complicated the task of opposing this
motion for summary judgment.   Nevertheless 75 hours is a lot, and

---

[4] The Court agrees with Plaintiff that Defendant miscalculated
the amount spent on this opposition as 90.1. (See Pl's. Response
to Itemized Objections 27-28.)

some of the time entries seem too high for attorneys of the caliber
and experience of Creitz and Garofolo.  Specifically, the Court
finds that 31.4 hours is an unreasonable amount of time for Mr.
Creitz, an attorney with 13 years of experience, to spend drafting
two sections of an opposition brief.  (See Pl's Response to
Itemized Objections 29 (claiming that amount).)  Instead, the Court
finds 18 hours, the time claimed for Mr. Garofolo to write three
different sections of the opposition, to be more reasonable.  (See
id.)  Accordingly, the Court reduces Mr. Creitz's time by 13 hours.

**MISCELLANEOUS PRETRIAL:**

Defendant objects to the 215.3 hours billed between May and
October 2007 in pretrial work, arguing that the time should be
reduced to 30 hours because 1) it is excessive, 2) the proposed
findings of law and fact and the trial brief involved similar
issues, and 3) because it involved work on the issues of estoppel
and fiduciary duty, on which Plaintiff did not prevail.

As previously noted, the fact that Plaintiff did not prevail
on every issue does not mean the attorneys' fees should be reduced.
Moreover, Plaintiff did not fail on her fiduciary breach and
estoppel claims; rather the Court did not need to reach them after
resolving the case on the basis of the benefits claim.  The Court
further agrees with Plaintiff that this case was extremely complex,
and that Defendant fought tooth and nail on every issue, adding to
the workload.  See, e.g., Graham v. Sauk Prairie Police Comm'n, 915
F.2d 1085, 1109 (7th Cir. 1990) ("A defendant cannot litigate
tenaciously and then be heard to complain about the time
necessarily spent by the plaintiff in response.")  Finally, the
Court notes that while this case did not go to trial, it did

proceed up to the eve of trial.  For all these reasons, Mr.
Creitz's and Mr. Garofolo's significant hours are understandable.

    Nevertheless, the Court finds the amount charged to be
unreasonable.  For example, Mr. Creitz billed at least 14 hours
(7/25/07; 7/26; 7/27; 8/2) on the proposed findings of fact and
conclusions of law, and Mr. Garofolo spent over 35 hours on the
trial brief (9/8/07; 9/9; 9/10; 9/11; 9/12; 9/13; 9/14).  These
hours do not include the research time that went into these briefs.
First, the Court agrees with Defendant that these documents
addressed almost identical issues; accordingly, it would have been
much faster to have the same attorney work on both.  Second,
although the Court was impressed with the quality of both of these
briefs, they should not have taken this long to draft.  For the
writing itself, the Court finds the realm of 5 hours for the
proposed findings and 15 hours for the trial brief to be more
reasonable.

    Also, the Court agrees with Defendant that both attorneys did
not need to travel to Los Angeles for, or even participate in, the
pretrial conference.  The Court appreciates that counsel split up
the work, and that they value the importance of the pretrial
conference.  Nevertheless, one experienced attorney can handle such
a nondispositive event.  The Court will thus remove half of the
time billed preparing for and attending the pretrial conference, or
8.95 hours.  Accordingly, the Court reduces Mr. Creitz's bill by
13.5 (9 for the proposed findings and 4.5 for the pretrial
conference) hours and Mr. Garofolo's by 24.5 (20 for the trial
brief and 4.5 for the pretrial conference).
///

**Settlement Conference:**

Cyr's attorneys seek 44.4 hours spent preparing for and attending the settlement conference.  As with the mediation, the Court finds that one of these well-equipped attorneys could have ably handled attending the settlement conference alone.  Creitz claims 16.3 hours preparing for, traveling to, attending, and discussing the settlement conference; Garofolo seeks 15.2 hours for the same.  The Court feels that approximately 4 hours of overlap is appropriate in discussing and preparing for a settlement conference.  Accordingly, the Court removes 14 hours  – or 7 from each attorney's time.

**POST-PRETRIAL CONFERENCE SUMMARY JUDGMENT MOTIONS:**

Plaintiff charges 221.4 hours for this work, which involved drafting summary judgment motions and replies on two issues, opposing a summary judgment motion of RSL's, drafting and a motion for reconsideration on the proper party issue.  Defendant's reliance on a significant amount of inadmissible evidence from settlement negotiations also led to a motion to strike.  The Court was impressed with both counsels' work, and ultimately resolved all these issues in Plaintiff's favor.

Nevertheless, 221.4 hours is excessive.  For instance, Mr. Garofolo spent over 21 hours on the benefits claim (9/23/07; 9/24; 9/25; 9/26).  While the issue was complicated by the loss of the administrative record and which extrinsic evidence to admit, nonetheless Mr. Garofolo should already have been familiar with most of the law at issue.  Further, having already drafted fact sections in this case several times, 4.5 hours drafting the fact section is unnecessary (9/23).

1    Mr. Garofolo spent over 36 hours preparing the opposition to

2    RSL's motion regarding the ambiguity of the plan language.

3    (10/2/07; 10/4; 10/5; 10/6; 10/7).  Given that Garofolo had already

4    done 4.5 hours of research on this issue (9/10), he should already

5    have possessed much of the relevant knowledge.  The ambiguity issue

6    was not straightforward, but neither is it worth 36 hours of an

7    experienced attorney's time.  Moreover, the ambiguity issue and the

8    benefits claim involved overlapping arguments, in that they both

9    focused on interpreting the benefits contract.  As Mr. Garofolo

10   headed up both the benefits motion and the ambiguity opposition,

11   one should have taken significantly less time than the other.  The

12   Court finds that a combined total of 25 hours on the two briefs is

13   much more appropriate.  Similarly, the Court appreciates that Mr.

14   Creitz reviewed the opposition, but 7.5 hours of review is

15   excessive.  Mr. Creitz should have needed no more than 4 hours of

16   revision time.

17   Mr. Creitz spent 8.8 hours drafting the proper party motion

18   (10/10/07; 10/11).  Plaintiff had already briefed this issue in her

19   opposition to RSL's original summary judgment motion.

20   Nevertheless, the Court finds this time reasonable because Mr.

21   Creitz managed to explain the issue such that the Court

22   reconsidered its prior ruling and found RSL to be a proper party.

23   The remaining entries the Court finds reasonable.  In

24   particular, the Court finds that it was necessary for both counsel

25   to attend and prepare for these hearings, given their complexity

26   and importance to the litigation.  Accordingly the Court reduces

27   Mr. Creitz's time by 3.5 and Mr. Garofolo's by 32 (reducing to 25

28

1  the hours for the ambiguity opposition and the benefits claim

2  combined).

3  **ORDER ISSUED 11/19/07:**

4      Contrary to Defendant's contention, the Court finds the

5  combined 5.5 hours counsel spent reviewing the summary judgment

6  order and explaining it to Plaintiff Cyr reasonable.  The Order was

7  long, complicated, and crucial to the litigation.  Both lead

8  attorneys needed to absorb and respond to it.

9  **WORK ON COST BILL AND FEES MOTION:**

10     Defendant argues that the 46.5 hours sought for work on this

11 motion is excessive because it is "far beyond that awarded to

12 plaintiffs in other cases."  (Def's. Itemized 41.)  However, in

13 this complicated case, counsel submitted detailed time sheets

14 documenting their work in 6-minute intervals over a period of

15 years.  Defendant has challenged almost everything about their

16 motion, submitting a 21-page opposition, a 44-page Itemized Summary

17 of Objections, several exhibits, and, just three days before the

18 hearing, further objections to Plaintiff's declarations.  It has

19 taken the Court at least 40 hours to process all these materials

20 and formulate an order.  Accordingly, the Court finds 46.5 hours to

21 be an appropriate award of fees for this motion.

22 **FEE TOTALS FOR HOURS:**

23     The Court calculates the fees as follows:

24 **Mr. Creitz:**     413 hours x $475/hour = $196,175.00

25 **Mr. Garofolo:**   461.2 hours x $400/hour = $184,480.00

26 **Paralegals:**     45.3 hours x $75/hour = $3,397.50

27 **TOTAL IN HOURLY FEES:**    $384,052.50

28 ///

**COSTS AND DISBURSEMENTS RE PERSONAL FILING OF DOCUMENTS:**

Plaintiff's counsel also seek $6,624.30 in reimbursement for travel and litigation costs.  Courts may award litigation expenses "when it is the prevailing practice in a given community for lawyers to bill those costs separately from their hourly rates." <u>Trustees of Constr. Indus. and Laborers Health and Welfarer Trust v. Redland Ins. Co.</u>, 460 F.3d 1253, 1258 (9th Cir. 2006) (internal quotation marks omitted).

Defendant challenges $732.82 in travel expenses charged for the personal filing of the complaint and the trial brief. Plaintiff contends it could not have timely submitted the briefs without traveling to Los Angeles.  The Court agrees with Defendant that personal travel was not necessary; instead, the Court awards counsel the cost of mailing these briefs by FedEx Priority Overnight: $43.70 x 2 = $87.40.  (<u>See</u> Garofolo Decl. Ex. 3 at 3 (noting that cost of mailing Reply to Motion in Limine No. 1 via FedEx Priority Overnight was $43.70).)

Defendant also challenges the duplicated airfare and lodging when both counsel attended hearings.  The Court has already found that both counsel did not need to attend the Scheduling Conference ($367.20), the Mediation ($357.20), the Settlement Conference ($64.40 + $49.40 + $109.40 + $109.40), or the Pretrial Conference ($207.80 + 261.80 + 130 (change fee)).  Accordingly, the Court awards half of the airfare claimed for these two trips: $1656.60/ 2 = $828.30.

**COST TOTALS:**

|  |  |
|---|---|
| Claimed Costs: | $6,624.31 |
| Personal Filing:   - | $732.82 |

25

1      Duplicative Trips:  -   $828.30

2      FedEx Shipping:    +   $87.40

3      **TOTAL AWARDED COSTS:    $5,150.59**

4

5      B.   <u>Pre-judgment Interest</u>

6      "A district court may award prejudgment interest on an award

7 of ERISA benefits at its discretion." <u>Blankenship v. Liberty Life</u>

8 <u>Assurance Co. of Boston</u>, 486 F.3d 620, 627 (9th Cir. 2007).  In

9 general, "the interest rate prescribed for post-judgment interest

10 under 28 U.S.C. § 1961 is appropriate for fixing the rate of

11 pre-judgment interest unless the trial judge finds, on substantial

12 evidence, that the equities of that particular case require a

13 different rate." <u>Id.</u> (internal quotations omitted).  Substantial

14 evidence "is defined as such relevant evidence as a reasonable mind

15 might accept as adequate to support a conclusion." <u>Id.</u> (internal

16 quotation marks omitted).  "Whether to award prejudgment interest

17 to an ERISA plaintiff is a question of fairness, lying within the

18 court's sound discretion, to be answered by balancing the

19 equities." <u>Landwehr v. DuPree</u>, 72 F.3d 726, 739 (9th Cir. 1995)

20 (internal quotation marks omitted).

21      Fairness favors the award of prejudgment interest in this

22 case.  Absent the obfuscation and delay tactics (refusing to make a

23 decision on her claim, "losing" her record, vehemently contesting

24 every claim in this lawsuit) on the part of RSL, Cyr would have

25 received her benefits a long time ago.  The Court finds that

26 compensation for that delay is appropriate.  However, Cyr seeks

27 prejudgment interest dating back to the inception of her disability

28 claim in 2000.  Cyr did not request a benefits adjustment with RSL

1   until 2004.  It would be unfair to attribute that four-year delay

2   to RSL when it should in fact be attributed to the unlawful wage

3   discrimination of her employer, CTI.  Instead, the Court finds the

4   appropriate date for the accrual of prejudgment interest to be

5   January 2005 – when Richard Walsh sent Cyr the email stating that

6   RSL's reinsurer refused her claim, and that he would soon provide

7   her with a final decision.  The Court has selected this date

8   because, as RSL never in fact did adjudicate her claim, it marks

9   the beginning of RSL's negligent handling of this claim.[5]

10      The federal interest rate as of the date of the Court's Order

11  was 3.58%.  The Court finds this amount to be appropriate.

12  Plaintiff argues that she should be compensated using a higher

13  interest rate because she and her husband were forced to take out

14  loans to cover their expenses, and the interest rates on those

15  loans is 6.125% and 9.25%.  The Court is not convinced.  Upon

16  reviewing the evidence, these loans appear to be business

17  investment loans taken out by Cyr's husband, Scott Cyr.[6]  (See

18  Scott Cyr Reply Decl.)  He asserts that had RSL "paid Laura's long-

19  term disability benefits at the corrected amount, retroactively and

20  prospectively, as it had originally agreed to pay, I believe we

21  would have avoided much of this debt, as well as the burden of

22  paying the interest on it."  (Id. ¶ 7.)  Yet, three of the loans

23  documented were borrowed in 2002-2003, before Cyr ever approached

24

25      [5] The Court declines to punish Cyr for the nine-month delay in
26  filing this action that RSL identifies, given RSL's history in this
    case of delay tactics.  (Opp'n 20.)

27      [6] Because the Court awards the federal interest rate, it need
28  not address Defendant's last-minute evidentiary objections to Scott
    Cyr's declaration.

RSL for a benefits adjustment.  (See id. Ex. 1.)  Therefore, RSL's decision to deny Cyr's benefits could not have led Scott to borrow those loans.  Six of the loans were borrowed before RSL changed its mind and refused to honor the adjustment.  (Id.)  Furthermore, although the Court understands that business loans could well have assisted Scott Cyr in providing for his family, these loans, which are for significant amounts of money (most over $150,000), could equally be for business ventures.  Scott Cyr has not provided the Court with sufficient information about his family's personal finances and the need for the loans and their particular amounts to convince the Court that but for RSL's actions, the Cyrs could and would have avoided these high interest rates.  Accordingly, the Court will award prejudgment interest, compounded quarterly, at the federal rate of 3.58% for the 35 monthly payments of $3,889.08 owed to Cyr from January 2005-November 2007.

**III. CONCLUSION**

Based on the foregoing analysis, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorneys' fees and prejudgment interest.

IT IS SO ORDERED.

Dated: January 16, 2008

_____
DEAN D. PREGERSON
United States District Judge

28